Our fourth case for this morning is J. Schmitt v. Central Processing Corporation, etc. Mr. Price. Thank you. May it please the Court, my name is Dan Price, and I represent the plaintiff in this case, J. Schmitt. We would ask this Court to reverse the grant of summary judgment entered by the District Court. It's an ADEA case, and it's our position that the evidence, when it's looked at in the light most favorable to Mr. Schmitt, contains reasonable inferences that require a trial. So explain to me in what way Mr. Everett is a proper comparator for Mr. Schmitt. It seems like he's in a distinctly different position. Well, from at least the beginning of 2013, when another estimator or salesperson named Preston Moore left the company, he resigned, the duties of a production coordinator were divided between Mr. Borcherding, who was promoted, and Mr. Schmitt, who had been there a long time and had done these things before. So he was doing the work that Mr. Everett was hired to do. But looking at it from the other end of the telescope, Mr. Schmitt is at a much higher end of the pay scale to begin with from Mr. Everett. So, yes, there's a hiatus during which these more low-end duties, if I can call them that, are picked up by a couple of other people, but that's not what they stick with. They're not going to triple the pay or whatever it would be of somebody at that end. So it's hard to see how they hired Mr. Everett to substitute for Mr. Schmitt. Well, Mr. Schmitt was doing a number of things. That's part of the complication that the case does present. He was doing sales and estimating at that plant. They call that being a project manager. And he was doing this work that is done after the bid is made, the so-called production coordination work. He was doing both. And that work was divided with another employee, Lyndall Borcherding, who is 38 years of age. Right. Now, Borcherding, I think, is a much closer case for you because it does look like she's doing a similar package of things to Mr. Schmitt. It's Everett that I don't get. Well, now, if you take Mr. Schmitt's view of what happened, he trained Mr. Everett in all the things that he was to do. Now, that's a disputed fact, but Mr. Schmitt says he did. And so then once Mr. Everett understands what his job is and he's able to perform it, Mr. Schmitt is immediately laid off in October of 2013, never to be rehired. And in that same time, after Mr. Moore leaves, Mr. Borcherding is promoted. He was the production coordinator before that promotion. And so when you look at the totality of this evidence, which is what I think the test is when we look at the evidence as a whole under Ortiz, we see this man who was asked, when are you going to retire? Then in 2011, he's the oldest salaried employee in the Salem plant, and he's furloughed for the winter because they don't think he has enough to do. The same thing happens in 2012. He's the only one. The same thing again happens in 2013. But that all may be the case. I mean, I realize this history actually suggests that they've been not using him 100% of the time for a long time, which, again, makes it a little bit hard to tie it to Everett. But putting that to one side, in order to have a comparator, you really have to have somebody who is doing essentially the same job, usually reporting to the same supervisor, same division of the company, and so on. And there are so many differences between the responsibility level that Mr. Everett had as compared to Mr. Schmitt that I'm concerned about whether that meets our test for a valid comparator. Well, I would suggest to the Court that I think it's the Coleman case that cites a Supreme Court case that says we don't have to have an exact comparison. Oh, I understand that. I'm a big fan of that rule. But still, you've got to have a pretty decent overlap. And if you're only doing 25% of the job and it's the less skilled part of that, and the supposed comparator isn't doing the other 75%, I don't know of a case of ours that has supported that as a comparator. Well, when you look at Borgerding and Everett together, I think they have to be viewed in a continuum. But those are what Schmitt's duties were. And so as to that component of Mr. Schmitt's duties at the time that Everett was hired, it would strike me as it would be a fair position to submit to a jury. Now, a jury may not accept that. They may not think it's correct. But to rule that that's just as a matter of law inappropriate when they're doing the exact same thing. Now, they have different titles. But they aren't. I mean, Everett isn't doing a lot of what Schmitt's doing. Schmitt may be doing everything that Everett's doing, but it doesn't run in the other direction. That's true. That's true. And that's where we have to bring in Borgerding to establish that there are substantially younger people doing exactly what Schmitt was doing. One's 38. That's Mr. Borgerding. And then there's Mr. Everett, who's 33. And under the McDonnell-Douglas test, that would be substantially younger people having a substantially better position. And we think that would fulfill the fourth element and allow us to go and analyze the pretext question. And, of course, the position of the defendant has been that we hired another salesperson in the Chicagoland area who's 57 years of age. But there's no evidence that that man was going to do the same job that Mr. Schmitt was doing until after Mr. Schmitt has been fired and accused Mr. Borgerding of age discrimination, and he has requested his personnel file. This is Keenan you're talking about, right? Yes, ma'am. Andy Keenan. And he is 57. And this is a sophisticated company. And, you know, one of the things that can rebut or establish pretext, implausibilities, inconsistencies, and with a company that uses e-mail and has these plans and strategies, there's nothing. The record is silent as to any documentation that would suggest that Mr. Keenan was going to do any of Mr. Schmitt's work until June of 2014 after these events have transpired and they know that they are going to be taking Mr. Schmitt's position, sued for age discrimination. And with that in mind, this could be viewed by a reasonable trier of fact as track covering. And that's the position that we're asserting as to that. When all of that evidence is considered in the light most favorable to Mr. Schmitt, it would seem reasonable to reverse the grant of summary judgment. I think that is consistent with, if it's a new standard, the rule of Ortiz, as has recently been articulated by this court. Okay, so Schmitt is put on this furlough on October 31st, 2013. That same day they hired Eddie Keenan. So Schmitt's on furlough and then permanently terminated in March of 2014. Yes, Your Honor, that's correct. Okay, just to get the sequence right. All right, thank you very much. I've got the light, so I'll sit down and save my time if I can. You certainly may. Mr. Nagorski. May it please the court, Alan Nagorski for the appellees. I also have with me my colleague Daniel Nardic and Ms. Bartol, executive with County Materials. In this case, county has proffered a non-discriminatory reason for its decision to terminate Mr. Schmitt's employment. And that reason was that the position was terminated due to a lack of work. It is therefore Mr. Schmitt's burden to come forward with some evidence from which a reasonable jury could conclude that that reason was a lie and that the real reason was that Mr. Schmitt was terminated due to his age. So are you conceding that Mr. Schmitt, at least for present purposes, that Mr. Schmitt made out a prima facie case? No, I would not concede that. So why don't you start with the prima facie case, and then I would be interested in your comments on pretext as well. Sure, Your Honor. Turning to the prima facie case, in this case, the unrefuted evidence in the record is that Mr. Schmitt's duties were absorbed largely by Mr. Keenan. Can you give me a sense, this is in conjunction with what I was talking about with Mr. Price, of how much of Mr. Schmitt's time was spent during that interim period doing the kinds of things that Everett did and how much was doing the more demanding jobs of, I guess, selling these. Right, right. I don't think, to be frank, that there's anything in the record that pins that period down to a specific time. I think what's important is that that was a three-month window where that position was vacant and that both Mr. Borcherding, who had held that position previously, and Mr. Schmitt were both working to make sure that those tasks were done. I think, as Mr. Schmitt said, prior to that time in his tenure as he testified at his deposition, his primary focus was the sales and estimating thing. That's what he did before Mr. Borcherding was promoted. Once Mr. Borcherding is promoted and the position is vacant, Mr. Schmitt and Mr. Borcherding shared those responsibilities and both also were doing the sales and estimating at that time. But then, in Mr. Schmitt's own words, when Mr. Everett comes on board, he returns back to the sales and estimating role. And how long does that last before that final furlough and eventual termination? I think that Mr. Everett comes on in July, so that's about three or four months before the furlough and nine months before the termination. And then, as Mr. Price suggested, there is some difference in the testimony about who trained Mr. Everett, but for our purposes we accept Mr. Schmitt's testimony that he participated in that training along with Mr. Borcherding. But that's not a material dispute of fact. And so, returning to the prima facie case, it is true that Mr. Borcherding eventually would assume a portion of Mr. Schmitt's duties, but it was a smaller portion. And the unrefuted testimony in the record from Mr. Boma is that 83% of the jobs, that 83% of the bidding work that would have been done by Mr. Schmitt after he left the company was done by Mr. Keenan and approximately 17% by Mr. Borcherding. There's a suggestion that this was some sort of cover-up, but frankly there's no evidence at all to support that. And there actually is evidence in the record, specifically Mr. Boma's testimony, both at his deposition and in his declaration, that Mr. Keenan began performing the Illinois work that Mr. Schmitt had done. Which is like the southern and northern Illinois. No, at that point Mr. Schmitt was responsible for the entire state. For the whole state. And his focus and his strength naturally would be the southern, which was a distinction with Mr. Keenan, but to the extent they were bidding on work in the northern part of the state, that would have also been done by Mr. Schmitt. So on that point, and Mr. Ebert I think was... And his age complaint was filed when? After his termination or before? The complaint with the EEOC? Right. That was not filed, I believe, until I want to say the fall, but that was quite a bit later. The reason I'm asking is I'm trying to probe the theory that they don't give Mr. Schmitt's work to Mr. Keenan until they realize that there's an age discrimination problem looming. Right. I'm sorry, I didn't memorize all the dates. It looks like the original charge of discriminations were filed on August 28th. Of which year? Of 2014. 14, okay. 2014. So I think the key point here is that there's really no evidence to support this conspiracy theory. There was no evidence that BOMA was aware of the request for the person file at that point in time. And the fact that some of these Missouri duties were transferred a little later just is too thin of a read to support that conspiracy theory. Turning quickly to pretext, at his deposition, Mr. Schmitt admitted that he had no evidence that Mr. BOMA was lying about the reason he gave. He may not agree with the reason. He may have thought that he should have shifted some of Mr. Ebert's work or Mr. Borsherding's work to him and kept him on board. But ultimately that was county materials and central processing's judgment about the best way to run their company in light of the lack of work. And I think this failure proof really highlights the evidence that remains, which is that after Mr. Schmitt's termination, his duties were largely absorbed by a 57-year-old. Three of the four individuals who were left in those positions were over the age of 50. And also the fact that Mr. BOMA had hired Mr. Schmitt at age 55 just a few years earlier. So all of these facts, when you put them in the single pile mandated by Ortiz, the only reasonable, no reasonable jury could come to the conclusion that Mr. Schmitt has carried his burden of concluding that county discriminated against him based on his age. If there are no further questions. Seeing none, thank you very much. Thank you. Anything further, Mr. Price? Yes, very briefly, if I might. I'd like to clarify one point about the claim of age discrimination that Your Honor brought up. That derives from a conversation that was had between Mr. BOMA and Mr. Schmitt on the telephone at the time he told him he was going to be terminated. I want to say this was in March of 2014. And it's an undisputed fact that in that phone conversation, Mr. Schmitt said, sounds to me like you're firing the old guy and keeping the young guy. And so I bring that up because that's where I landed on the fact that there is an assertion of age discrimination here. And then there was this request for this personnel file, all of which transpired before there was a single shred of evidence that Mr. Keenan was going to work in the southern Illinois area where this plant is located, or in Missouri. That all occurs in June. And I don't think a jury should have to accept Mr. BOMA's assertion on that fact without cross-examination. These things all came up in the summary judgment process after discovery was closed. And it would seem fair and right to be able to test that testimony with a trier of fact. And everything that Mr. Nagorski says could be accepted by a reasonable trier of fact, but most respectfully from the plaintiff's position, it would not have to be. And so if there is nothing else, I'll conclude there. Thank you. I see no other questions, so thank you very much, Mr. Price. Thank you, Mr. Nagorski. We'll take the case under advisement.